## C. E. McELROY ET AL. v. NUCLEUS ASSOCIATION.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 21, 1889—Decided January 13, 1890.

1. The charter of a corporation providing that its property should be purchased and held by a board of five trustees, a mortgage for the purchase money of land, executed by its president and secretary, without the corporate seal, and unauthorized and unratified by any corporate resolution, will be invalid against the corporation.

2. Such a mortgage having been taken by an executor to secure the payment of purchase money for lands sold by him under a power in the will, and subsequently found to be void, the executor has full power to demand and receive payment of the purchase money, thus discharging the vendee from further liability on account thereof.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 85 October Term 1889, Sup. Ct.; court below, No. 222 November Term 1887, C. P.

On October 10, 1887, Catherine E. McElroy and R. T. McGrew brought assumpsit against the Nucleus Association of the Borough of Monongahela City, to recover the sum of $500, with interest from September 2, 1884. The defendant pleaded non-assumpsit.

At the trial on February 25, 1889, the plaintiffs put in evidence the will of Robert McGrew, deceased, duly admitted to probate on June 10, 1841, and letters issued thereon to James McGrew, Minas Tindle and Maria McGrew, the executors therein named. The testator by his said will bequeathed and devised all his estate, real and personal, to his wife, Maria McGrew, during her natural life, or so long as she remained his widow; at the decease of his wife, his estate was to be divided equally between his two sons, James A. and Robert T. McGrew, and his daughter Catherine E. McGrew; and his executors were authorized, by and with the consent of his wife, to sell and convey all or any part of his real estate, as they might think most advantageous.

The plaintiffs then put in evidence a deed executed by Maria McGrew and Minas Tindle, executors of Robert McGrew, deceased, to the Nucleus Association of the Borough of Monongahela City, dated April 7, 1869, duly recorded on February 23, 1870, conveying, in consideration of $500, a lot of ground in Monongahela City. They then offered in evidence a mortgage executed and acknowledged by "I. S. Crall, President," and "T. R. Hazzard, Secretary," to the Nucleus Association of the Borough of Monongahela City, dated April 7, 1869, conveying the same property covered by the foregoing deed to secure the bond of the said association, as recited therein, "conditioned for the payment of lawful interest semi-annually on the first days of October and April in each year, on the sum of five hundred dollars, to the said Maria McGrew, widow of the said Robert McGrew, deceased, during her natural life, and for the payment, within one year after the death of the said Maria McGrew, of the said principal sum of five hundred dollars, with interest thereon from the death of the said Maria McGrew, to the children of the said Robert McGrew, deceased, in his said will named, or their legal representatives, as in and by the said recited obligation and the condition thereof will more fully and at large appear." The record offered showed that on December 19, 1881, the president judge of the Court of Common Pleas had certified the allowance of satisfaction to be entered on said mortgage.

To this offer the defendant objected: 1. That the paper offered in evidence was not signed or sealed by the defendant corporation. 2. That it was not authorized or directed by it. 3. That, if executed at all, it was not executed under any power possessed by that corporation ; the persons whose names are signed thereto had no power officially or otherwise to bind the defendant corporation. 4. The said writing does not purport to be or contain a contract for the payment of the money. 5. The record is not sufficient to prove the execution of the mortgage.

By the court: Offer refused; objection sustained, on the ground that the record does not sufficiently prove the execution of the mortgage.

The plaintiff then adduced testimony as to the signatures of the attesting witness and of the persons executing the mort-

gage; that in 1869 Isaac Crall was president, and T. R. Hazzard was secretary of the defendant association, and that it had no common seal in 1869. The offer of the mortgage record was then renewed, when the objections were also renewed.

By the court: Objections overruled; offer admitted; exception.[1]

The plaintiffs then showed that James A. McGrew had died in 1865, unmarried and without issue; that Mrs. Maria McGrew had died September 2, 1884; that the plaintiffs were the only living beneficiaries of the will of Robert McGrew, deceased, and that they had been paid no part of the sum secured to be paid by the said mortgage. The plaintiffs then rested.

The defendant association, under objection and exception to the plaintiffs, put in evidence its charter of incorporation, which provided that the officers of the association should be five trustees, who should choose from among themselves a president, secretary and treasurer; that the said board of trustees should have charge of the funds and property of the association, to be disbursed and managed as they might be directed by the by-laws; that "The trustees shall have power to purchase, take and hold to them and their successors and assigns, and of selling and transferring in fee-simple or for any less estate, such lands, tenements, and hereditaments, as shall be sold, devised, conveyed, or granted to them by deed, bequest or otherwise, . . . ." The defendant then proved by the officers of the association that on December 17, 1881, its treasurer had paid the full debt and interest due upon the mortgage, heretofore mentioned, to Mr. T. H. Baird, the attorney for Maria McGrew, one of the executors of Robert McGrew, deceased, and that there was no record on the minutes of the association authorizing or recognizing the mortgage.

At the close of the testimony, McILVAINE, P. J., charged the jury as follows:

There appears to be little or no dispute as to the facts in the case. Both the plaintiffs' and defendant's counsel have asked me to hold that the case is one that must be determined by the court upon the admitted facts; and, as all the material facts in the case are undisputed, we are also of opinion that it is our duty to give you binding instructions, the real question in the

Charge of Court below.

case being, whether the payment of the $500 of purchase money to Mrs. McGrew, in 1881, discharged the defendants from liability under their contract entered into when they purchased the lot in question, or whether the plaintiffs have a right to collect the same from the defendants notwithstanding this payment.

The defendant association admits that the lot was conveyed to them on April 7, 1869, the consideration being $500, and that they went into possession in pursuance of the conveyance made to them, and that they have been in possession ever since. They also admit, or at least do not deny, that the lot conveyed to them was the property of the testator, Robert McGrew, deceased, at the time of his death.   They also admit that the interest on the $500 purchase money was paid to Mrs. McGrew regularly from 1869, up to December 17, 1881, and at that date, they paid $500 to Maria McGrew, Minas Tindle, the other grantor in the deed, having died in 1876.

The treasurer of the association who paid Mrs. McGrew, admits that he saw the paper purporting to be the mortgage of the association which was offered in evidence, before he paid the $500, and that on account of the provisions of that paper he refused to pay the $500 unless the mortgage was satisfied ; and he says the widow Maria McGrew signed the receipt indorsed on the paper when the money was paid, and that he paid the $500 in discharge of the debt secured by the mortgage. He also says that about the time he paid the $500, perhaps before he paid it, he received a letter from Mrs. McElroy, one of the plaintiffs, claiming that the $500 belonged to her and her brother, and not to the widow. . . . . .

This paper or mortgage was not admitted in evidence as the obligation upon which suit was brought, for clearly an action of assumpsit could not be maintained upon it; and more than that, the suit in this case, according to the plaintiffs' statement, is not brought on this paper, but on the agreement which the defendant association entered into at the time they bought the lot, viz. : That they should pay $500 therefor, and which it is admitted was not paid at the time the deed was delivered.   But the paper was simply admitted in evidence to show, so far as it would, how the $500 consideration money mentioned in the deed made to the association of a lot in which Maria McGrew had a life-estate and the children of Robert McGrew, deceased, an interest as remaindermen, should be paid.

To repeat somewhat. The association admit that they bought a lot of which Robert McGrew died seised, and went into possession in 1869. It is admitted that Robert McGrew, deceased, had been dead twenty-six or twenty-seven years when the lot was sold. It is admitted that $500 was to be paid for the lot. Under the will of Robert McGrew, deceased, the lot before sold belonged to Maria McGrew as life-tenant and the plaintiffs as remaindermen, with a power in the executors to sell if they thought it most advantageous. It is admitted that the $500 was not paid at the time of sale. The plaintiffs say that under the will they were entitled to the lot, or the purchase money for which it was sold, at the death of Maria McGrew, and [the mortgage was admitted in evidence to show that the association recognized the justice and legality of this claim, and that at the time the sale was made they agreed to hold the $500 for them and pay it to them one year after Mrs. McGrew's death. Taking then into consideration the admitted facts, that Maria McGrew had only a life-interest in the lot, and the plaintiffs had an interest in it as remaindermen when it was sold, and that the widow could have no greater interest in the proceeds of sale of the lot than she could have in the lot itself, and the further fact that the association executed an instrument of writing at the time of sale purporting to be a mortgage on the property conveyed and given to secure the purchase money, and that in that paper it is provided that the $500 shall be paid to the children of Robert McGrew, deceased, named in his will, of whom the plaintiffs are the survivors, and that only the interest was to be paid to Mrs. McGrew, and the fact that the sale was made twenty-seven years after the testator's death and therefore presumably not for the purpose of paying any of the debts of the testator, and the fact that for twelve years after the conveyance was made to the association, its treasurer paid Mrs. McGrew interest on the $500, and that one of the plaintiffs made claim to the treasurer of the association to the $500 before it was paid to Mrs. McGrew in 1881, we are of opinion that the plaintiffs are entitled to recover the amount of their claim, and that the payment of the $500 to Mrs. Maria McGrew, on December 17, 1881, did not discharge the liability of the defendant association for the $500 purchase money for the lot conveyed to them by Maria McGrew and Minas Tindle

on April 7, 1869; and therefore your verdict, gentlemen of the jury, will be in favor of the plaintiffs for $500, with interest from September 2, 1884, the date at which it is admitted Mrs. McGrew died.] [4]

The defendant's counsel asks us to charge you that your verdict should be for the defendant. This is refused. [2]

Plaintiffs' counsel ask us to charge you that your verdict should be in favor of the plaintiffs for $500, with interest from September 2, 1884. This is affirmed. [3]

The jury returned a verdict in favor of the plaintiffs for $634.50. Judgment having been entered on the verdict, the defendant took this appeal, assigning for error:

1. The admission of plaintiffs' offer. [1]
2. The answer to the defendant's point. [2]
3. The answer to the plaintiffs' point. [3]
4. The portion of the charge embraced in [ ] [4]

*Mr. Thos. H. Baird*, for the appellant.

Counsel cited: (1) Angell & A. on Corp., § 291; Gordon v. Preston, 1 W. 385; Bank of Augusta v. Earle, 13 Pet. 519; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Scott v. Fields, 7 W. 360; Fidelity etc. Co. v. Miller, 89 Pa. 26; 4 Kent. Com., 145; Tonkin v. Baum, 114 Pa. 414; Baum v. Tonkin, 110 Pa. 569; Snyder Tp. v. Bovaïrd, 122 Pa. 442. (2) 1 Chitty, Pl., 13; 2 Tr. & H. Pr., 135; Strohecker v. Grant, 16 S. & R. 237; Mississippi etc. R. Co. v. Association, 4 Brewst. 79; De Bolle v. Insurance Co., 4 Wh. 68; Guthrie v. Kerr, 85 Pa. 303; Dundas's App., 73 Pa. 474; Whiteside v. Whiteside, 20 Pa. 473.

*Mr. H. M. Dougan* (with him *Mr. A. M. Todd*), for the appellees.

Counsel cited: Lee v. Gibbons, 14 S. & R. 105; Dreer v. Penna. Co., 108 Pa. 226; Oil Creek etc. R. Co. v. Transportation Co., 83 Pa. 160; Gordon v. Preston, 1 W. 385; Watts's App., 78 Pa. 370; Kent v. Mining Co., 78 N. Y. 183; Allegheny City v. McClurkan, 14 Pa. 83; Morawetz on Corp., §§ 630–1, 689; Angier v. Eaton etc. Co., 98 Pa. 594; McLean v. Wade, 53 Pa. 150.

OPINION, MR. JUSTICE WILLIAMS:

In April, 1869, the executors of Robert McGrew sold a narrow lot of land in Monongahela City to the Nucleus Association for $500. They had ample power, under the will of their testator, to negotiate the sale, execute and deliver a deed, and receive and receipt for the purchase money. Instead of receiving the money and investing it, they took from the association what were called a bond and mortgage, providing for the payment of interest annually to the widow, Maria McGrew, who was one of the executors, so long as she should live, and for the payment of the principal, within one year after her death, to the heirs at law of Robert McGrew. The association paid the interest up to 1881, when the widow, then the surviving executrix of Robert McGrew, demanded the payment of the principal sum. She produced the mortgage, without the bond. This had not been recorded, and its existence seems to have been unknown to the association. Upon its production the association had to determine its liability upon it, and, after taking advice, concluded that it was liable to the executors from whom they bought, but that the mortgage was not binding upon the association. They accordingly paid the principal to the surviving executrix, by whom the mortgage was satisfied and surrendered to the association. Maria McGrew died in 1884, and in 1887 this action was brought by the heirs at law of Robert McGrew to recover the $500 so paid to the surviving executrix.

Was the mortgage properly admitted as evidence against the association on the trial of this action of assumpsit? The charter provided that the property of the association should be purchased, held, managed, and sold by a board of five trustees. The mortgage was executed by the president and secretary, and not the trustees. It was not sealed with the corporate seal; and there was no resolution authorizing, ratifying, or in any manner recognizing, the making of this mortgage, to be found on the books of the association. It would seem quite clear, therefore, and the learned judge of the court below was of that opinion, that the paper called a mortgage was not the act and deed of the corporation, or binding upon it as such. If this be so, the association was liable to the executors, from whom it purchased. The attempt to secure the purchase money in a

given way having failed, the executors had the right to require its payment to them. This the surviving executrix did; and the association paid over the money in the same manner and with the same effect as if the ineffectual effort to secure its payment by mortgage had not been made. It is not doubted that if the association had paid the purchase money to the executors in 1869, upon receiving a deed for the lot, it would have been a good payment. The executors were authorized to receive the money, and were liable as executors for the proper use and investment of it. They did not lose their power, as executors, to receive the purchase money, nor was the association relieved of its duty, as a purchaser, to pay to its vendors, because an unsuccessful effort had been made to secure the payment of the principal sum to the parties who might ultimately be entitled to receive it from the executors.

The mortgage seems to have been found in 1881 to be worthless as a security, because never properly executed; and the executors, finding themselves without security for the purchase money, very properly demanded its payment. The mortgage thereafter was evidence for no purpose. It was not a security for the money, nor evidence of any existing or valid contract for its payment to any person. It showed only an unsuccessful effort by the executors to obtain a security for the principal, which imposed no legal liability and conferred no rights on any one. The first, second, and third assignments of error are sustained, and the

Judgment is reversed.